IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**RYAN S. WALTERS, et al.**                                               **PLAINTIFFS**

v.                                                  CIVIL ACTION NO. 2:10-CV-76-KS-MTP

**ERIC HOLDER, JR., in his official capacity as**
**Attorney General of the United States, et al.**                         **DEFENDANTS**

MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court **grants** Defendants' Motion for Summary Judgment [73] and **denies** Plaintiffs' Motion for Summary Judgment [76].

I. BACKGROUND

As the Court explained in previous orders, this cases involves a Constitutional challenge to the "minimum essential coverage" provision – more commonly referred to as the "individual mandate" – of the Patient Protection and Affordable Care Act ("PPACA"), 111 PUB. L. NO. 148, § 1501(b), 124 Stat. 119, 244 (2010) (codified as amended at 26 U.S.C. § 5000A). In its previous opinions, the Court addressed the issue of standing. *Bryant v. Holder*, 809 F. Supp. 2d 563 (S.D. Miss. 2011); *Bryant v. Holder*, No. 2:10-CV-76-KS-MTP, 2011 U.S. Dist. LEXIS 23975 (S.D. Miss. Feb. 3, 2011). In the first opinion, the Court granted Defendants' motion to dismiss for lack of standing, but it allowed Plaintiffs to amend their complaint. *Bryant*, 2011 U.S. Dist. LEXIS 23975 at *39-*40.

After Plaintiffs amended their complaint, Defendants filed a second motion to dismiss, which the Court granted in part and denied in part. *Bryant*, 809 F. Supp. 2d

at 571-72. With respect to Count One and Count Two of the complaint, the Court held that Plaintiffs had asserted sufficient facts to show a present injury that is concrete, particular, fairly traceable to the individual mandate, and likely to be redressed by a favorable decision. *Id.* at 571. However, with respect to Count Three, the Court held that Plaintiff Bryant had not alleged sufficient facts to show that he will suffer an actual or imminent harm that is concrete, particular, fairly traceable to the mandate, and likely to be redressed by a favorable decision. *Id.* at 572.[1] Therefore, the Court granted Defendants' second motion to dismiss as to Count Three of the First Amended Petition, but it denied the motion as to Count One, Count Two, and Plaintiffs' claim that the mandate violated their right to medical privacy. *Id.*

The parties then filed a joint motion [46] to stay the case until the Supreme Court of the United States had ruled on related cases. The Court held a teleconference, during which counsel agreed that the only issue in the present case that was not presented to the United States Supreme Court was the medical privacy claim. Accordingly, the Court granted [47] the motion with respect to all of the issues in this case except for Plaintiffs' claim that the individual mandate violated their right to medical privacy.

Defendants eventually filed a motion to dismiss [71] seven of the Plaintiffs for discovery violations, which the Court granted [100]. Plaintiffs and Defendants filed

---

[1] Plaintiffs never sought leave to reinstate or reassert Count Three of the Second Amended Petition after Plaintiff Bryant was elected Governor. Therefore, Count Three remains dismissed. In any case, a plaintiff must have standing at the time the complaint is filed. *Pluet v. Frazier*, 355 F.3d 381, 385 (5th Cir. 2004).

cross-motions for summary judgment [73, 76] as to Plaintiffs' privacy claims, and the motions are fully briefed.

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (punctuation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue

3

for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### III. STANDING

Plaintiffs seek a declaratory judgment as to the constitutionality of the individual mandate. Although the Declaratory Judgment Act[2] allows "pre-enforcement review of a statute," the Court's jurisdiction is still "limited to the resolution of an actual controversy." *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000). "The doctrine of standing is one of several doctrines that reflect this fundamental limitation." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 129 S. Ct. 1142, 173 L. Ed. 2d 1142 (2009). Defendants once again argue that Plaintiffs do not have constitutional standing to challenge the minimum essential coverage provision. "Constitutional standing is a jurisdictional question," and, therefore, the Court must resolve the issue before proceeding to the merits of the case. *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 769 (5th Cir. 2011).

"To have standing at the summary judgment stage, [a plaintiff] must present evidence that, if true, would demonstrate an injury in fact that is fairly traceable to the defendant's conduct and likely to be redressed by a favorable ruling." *Prison Legal News v. Livingston*, 683 F.3d 201, 212 (5th Cir. 2012). While general allegations are sufficient to survive a motion to dismiss for lack of standing, "specific facts must be adduced to survive summary judgment." *Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 636 (5th Cir. 2012); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112

---

[2] 28 U.S.C. § 2201.

4

S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (party invoking jurisdiction must establish standing with the manner and degree of evidence required at each successive stage of litigation).[3] For the reasons stated below, the Court finds that Plaintiffs Bryant and Conrad have not presented evidence that they have suffered or will suffer an injury that is fairly traceable to the individual mandate. However, the Court finds that Plaintiffs Walters and Shotwell presented sufficient evidence to demonstrate that they have standing to challenge the mandate.

### A.     *Bryant and Conrad*

It is undisputed that Plaintiffs Bryant and Conrad currently have health insurance. Therefore, the only way that the individual mandate and its tax penalty could affect them is if they dropped their current health insurance, but neither Bryant nor Conrad has presented any evidence to that effect. Although Conrad initially stated in his interrogatory responses that he "has no intention to maintain insurance," he later stated that he "may not have it in the future" and that he "may decide not to keep insurance or maintain it."[4] His chief complaint, therefore, is that he merely "wants the

---

[3]The Court's standing analysis is also informed by the general principles outlined in its previous decisions. *See Bryant*, 809 F. Supp. 2d at 565-67; *Bryant*, 2011 U.S. Dist. LEXIS 23975 at *8-*35. In the interest of brevity, the Court will not retread familiar ground.

[4]Plaintiffs may argue that the Court should credit Conrad's assertion that he "has no intention to maintain insurance," but discredit his assertion that he merely "wants the option to be self-insured." A party can not create a genuine issue of fact by contradicting their own testimony. *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 259 (5th Cir. 2001); *Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000).

5

option to be self-insured." Likewise, Plaintiff Bryant stated that he "currently has health insurance and will have it throughout his term to elected office," but he did not aver that he intends to go without health insurance once he leaves public office. Therefore, Bryant and Conrad have not presented evidence that the individual mandate will affect them. If they do not intend to drop their current insurance – and the record contains no evidence that they do – they will neither be forced to obtain health insurance nor subjected to a tax penalty.

As for a present injury, Bryant specifically denied that he had experienced any present financial pressure or burden in anticipation of the mandate. Conrad, on the other hand, stated in interrogatory responses that he and his wife "have decided to cut back on spending in order to save as much money as possible" in anticipation of the tax penalty. He further stated that he is "adjusting his finances now by setting aside money to pay the anticipated provision's penalties," and that he "has been more frugal in his spending habits and abstains from larger purchases." The Court will assume that these statements are sufficient to satisfy Conrad's burden to provide specific evidence of an injury. However, the alleged present injury is not fairly traceable to the mandate, as there is no evidence that the mandate and tax penalty will affect Conrad.

Plaintiffs also argue that merely losing the option of being self-insured constitutes an injury sufficient to create standing. Such reasoning would create absurd results when carried to its logical conclusion. Any person within the United States – beyond those explicitly exempted – would have standing to challenge the individual mandate. Indeed, any person within the United States would have standing to

challenge any law that proscribes conduct, regardless of whether that person actually intends to engage in the conduct at issue.

For these reasons, the Court finds that Plaintiffs Phil Bryant and Richard Conrad do not presently have standing to challenge the individual mandate. Their circumstances may change, but the Court must consider the present record – which contains no evidence that Bryant and Conrad are or will be affected by the mandate. Their claims are dismissed without prejudice.

### B. *Walters and Shotwell*

It is undisputed that Plaintiffs Walters and Shotwell do not have health insurance, and that neither of them intend to obtain health insurance before the individual mandate goes into effect. Indeed, Defendants do not argue that Walters and Shotwell will not be subject to the mandate. Rather, Defendants argue that the mandate will not violate their right to medical privacy – effectively moving beyond the issue of standing into the merits of the case. Therefore, as it is undisputed that Plaintiffs Walters and Shotwell will be subject to the individual mandate and tax penalty, the Court finds that they have standing to challenge it. *See Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008) ("[P]laintiff must produce evidence of an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute."); *Speaks v. Kruse*, 445 F.3d 396, 399 (5th Cir. 2006).

### IV. RIPENESS

The Constitution's "case or controversy" limitation is further reflected in the

challenge any law that proscribes conduct, regardless of whether that person actually intends to engage in the conduct at issue.

For these reasons, the Court finds that Plaintiffs Phil Bryant and Richard Conrad do not presently have standing to challenge the individual mandate. Their circumstances may change, but the Court must consider the present record – which contains no evidence that Bryant and Conrad are or will be affected by the mandate. Their claims are dismissed without prejudice.

### B. *Walters and Shotwell*

It is undisputed that Plaintiffs Walters and Shotwell do not have health insurance, and that neither of them intend to obtain health insurance before the individual mandate goes into effect. Indeed, Defendants do not argue that Walters and Shotwell will not be subject to the mandate. Rather, Defendants argue that the mandate will not violate their right to medical privacy – effectively moving beyond the issue of standing into the merits of the case. Therefore, as it is undisputed that Plaintiffs Walters and Shotwell will be subject to the individual mandate and tax penalty, the Court finds that they have standing to challenge it. *See Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008) ("[P]laintiff must produce evidence of an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute."); *Speaks v. Kruse*, 445 F.3d 396, 399 (5th Cir. 2006).

### IV. RIPENESS

The Constitution's "case or controversy" limitation is further reflected in the

doctrine of "ripeness." *Foster*, 205 F.3d at 857.

> Ripeness is a component of subject matter jurisdiction, because a court has no power to decide disputes that are not yet justiciable. A court should dismiss a case for lack of ripeness when the case is abstract or hypothetical. To determine whether claims are ripe, we evaluate (1) the fitness of the issues for judicial resolution, and (2) the potential hardship to the parties caused by declining consideration. These prongs must be balanced, and a case is generally ripe if any remaining questions are purely legal ones. Even where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness. In this sense, the doctrines of ripeness and standing often overlap in practice, particularly in an examination of whether a plaintiff has suffered a concrete injury. If the purported injury is contingent on future events that may not occur as anticipated, or indeed may not occur at all, the claim is not ripe for adjudication.

*Lopez v. City of Houston*, 617 F.3d 336, 341-42 (5th Cir. 2010) (punctuation and citations omitted). Plaintiffs claim that the individual mandate violates their right to privacy by requiring them to disclose confidential information and by depriving them of their autonomy in making certain types of personal decisions. *See Fadjo v. Coon*, 633 F.2d 1172, 1175 (5th Cir. 1981) (noting two interrelated strands of the constitutional right to privacy).[5] Defendants argue that Plaintiffs' privacy claims are not ripe. The Court agrees.

### A.   *Other Privacy Cases*

Cases involving privacy claims frequently involve fact-specific analyses. For example, *Whalen v. Roe*, 429 U.S. 589, 97 S. Ct. 869, 51 L. Ed. 2d 64 (1976), involved a privacy challenge to a New York law which required the establishment of a central

---

[5]Defendants contend that Plaintiffs did not originally plead a claim related to the "autonomy" strand of the right to privacy. For purposes of addressing the present motions, the Court will assume that Plaintiffs did plead such a claim.

filing system containing the names and addresses of all persons obtaining a doctor's prescription for a controlled substance. To determine whether the law adequately protected the plaintiffs' privacy, the Supreme Court considered the District Court's factual findings regarding the actual processes by which the state gathered, processed, stored, and secured the information. *Id.* at 593-95. The Supreme Court also considered the number of state employees with access to the information, and the number of times the data had been accessed. *Id.* at 595. Furthermore, the plaintiffs offered testimony from individuals regarding why they feared disclosure of the prescription data, and several physicians testified regarding their patients' reactions to the prescription data bank. *Id.* at 595 n. 16.

In *Nixon v. Administrator of General Services*, 433 U.S. 425, 429, 97 S. Ct. 2777, 53 L. Ed. 2d (1977), former President Nixon challenged the constitutionality of a law requiring the Administrator of General Services to take custody of his Presidential papers and tape recordings. President Nixon claimed that the law violated his right to privacy. *Id.* at 455. The Supreme Court noted that the issue could not be addressed in the abstract, but it must be "considered in light of the specific provisions of the" challenged law. *Id.* at 458. The Court then considered the nature of the documents at issue, the specific protections afforded by the challenged law, past practices when archiving Presidential documents, and the archivists' track record in protecting private information. *Id.* at 459-62. It ultimately concluded that the privacy claim was without merit when viewed within the context of, among other things, the President's status as a public figure, the limited nature of the intrusion at issue, and the public interest

in preserving the materials. *Id.* at 465.

In *Woodland v. City of Houston*, 940 F.2d 134, 135 (5th cir. 1991), a class of plaintiffs challenged pre-employment polygraph tests required by a municipality. The Fifth Circuit held that the district court erred by not submitting factual questions to the jury regarding "the pervasiveness of abuses" in the administration of the tests, and whether the abuses "were both continuing and affecting the class as a whole." *Id.* at 139. The city had entered into a contract with a polygraph company which specified the questions to be asked. *Id.* However, all of the evidence offered at trial with respect to the tests predated the contract by two years, and the questions specified by the contract varied from those described by the named plaintiffs. *Id.* The Court observed that it was unable to resolve the legal questions raised on appeal "without clear resolution of the factual issues," and it remanded the case to the district court to "resolve the subsidiary factual questions, such as what questions were asked during the named plaintiffs' polygraph tests and, if there were abuses of privacy, did the abuses cause injury to the named plaintiffs, and were they pervasive." *Id.* On remand, the district court provided a supplemental opinion outlining the factual basis for its finding that the polygraph questions were unreasonably intrusive. *Woodland v. City of Houston*, 918 F. Supp. 1047 (S.D. Tex. 1996). It considered evidence concerning the nature of the questions asked, the procedures surrounding the administration and interpretation of the test, and the provisions of the contract between the city and the

test administrators. *Id.* at 1050-53.[6]

In *Southerland v. Thigpen*, 784 F.2d 713, 714 (5th Cir. 1986), a Mississippi inmate sought preliminary injunctive relief from the state's attempt to remove her from the hospital after she gave birth. She argued that returning her to prison violated her constitutional right to privacy insofar as it prevented her from breast-feeding her child. *Id.* at 715. The Court held that she had not demonstrated any likelihood of prevailing on the merits of her claim. *Id.* at 718. In coming to its decision, it considered logistical concerns particular to the Mississippi penitentiary system, medical concerns particular to the plaintiff's child, and general medical concerns related to breast-feeding. *Id.* at 717-18.

Each of these cases involved a challenge to a state or federal law on the basis that it violated the constitutional right to privacy. Of course, each one is distinguishable from the present case in some respect. *Whalen*, 429 U.S. at 591 (involved forced disclosure of private information to government agency); *Nixon*, 433 U.S. at 447-48, 452-53 (involved Presidential privilege and historical interest in archiving Presidential papers); *Woodland*, 940 F.2d at 138 (government interest in screening potential employees); *Southerland*, 784 F.2d at 716 (necessary limitation of rights inherent to incarceration). In the Court's opinion, these distinctions illustrate why Plaintiffs' claims are not ripe. Each of the opinions cited above contained specific factual considerations relevant to the plaintiffs' privacy claims. In the present case, the

---

[6]The case eventually settled. *Woodland v. City of Houston*, 1996 U.S. App. LEXIS 34395 (5th Cir. Aug. 21, 1996).

record contains no specific facts pertinent to Plaintiffs' privacy claims.

## B.     *The Present Case*

The autonomy strand of the right to privacy demands "something approaching equal protection 'strict scrutiny' analysis . . . ," *Plante v. Gonzalez,* 575 F.2d 1119, at 1134 (5th Cir. 1978), while the confidentiality strand demands an intermediate standard of review, weighing "the government's interest in disclosure against the individual's privacy interest." *NTEU v. U.S. Dept. of Treasury*, 25 F.3d 237, 242 (5th Cir. 1994). To competently conduct either analysis, the Court must at least consider the particular demands of the challenged law, the nature of the information to be disclosed, the purpose for which the government seeks it, the protections afforded to the disclosed information, and any other circumstances particular to the dispute. In the present case, the record contains no specific evidence regarding the information an insurance company will demand upon enrollment, the protections that an insurance company will afford to the information once disclosed, any specific insurance company's application or claim process, or any medical providers' billing practices and procedures.

The parties broadly addressed certain HIPAA provisions which Defendants claim will protect Plaintiffs' personal information. However, consideration of HIPAA regulations alone – without any evidence of insurance carriers' procedures, practices, and track record with respect to the protection of personal information – is not enough for the particularized inquiry demanded by the precedents cited above. Without any evidence as to the effectiveness of HIPAA within the particular context of this case, the issue becomes an abstract debate, at best. In fact, the parties acknowledged in briefing

that certain regulatory changes may impact the issues presented here, further demonstrating that Plaintiffs' privacy claims are not ripe. *See* Modifications to the HIPAA Privacy, Security, and Enforcement Rules Under the Health Information Technology for Economic and Clinical Health Act, 75 Fed. Reg. 40868 (July 14, 2010) (to be codified at 45 C.F.R. pts. 160, 164).

## C.    *Jasper's Affidavit*

The only evidence in the record regarding what will actually happen to Plaintiffs' private information once the individual mandate becomes effective is an affidavit [93-6] from Joel Jasper, a member of the Mississippi Health Insurance Exchange Advisory Board. Jasper's opinions, however, have no effect on the Court's ripeness analysis. First, the Court declines to consider Jasper's expert testimony because Plaintiffs have not demonstrated that it passes muster under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 516 U.S. 869, 116 S. Ct. 189, 133 L. Ed. 2d 126 (1995). Second, even if it did, the Court's ripeness analysis would have the same outcome.

### 1.    *Daubert*

Jasper's expert testimony must be examined pursuant to the Court's gate-keeping function as described in *Daubert*. "[W]hen expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir, 1997). "Not every guidepost outlined in *Daubert* will necessarily apply to expert testimony based on . . . practical experience," but the Court must still

determine whether the reasoning and methodology underlying the testimony are reliable. *Id.* at 990-91; *see also Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 725 (5th Cir. 2009).

Rule 702 specifically requires that an expert's testimony be based upon sufficient facts or data. FED. R. EVID. 702(b). Phrased differently, proposed expert testimony "must be supported by appropriate validation – *i.e.*, good grounds, based on what is known." *Daubert,* 509 U.S. at 590 (punctuation omitted). Therefore, "[w]here an expert's opinion is based on insufficient information, the analysis is unreliable." *Paz v. Brush Eng'red Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009); *see also Seaman*, 326 F. App'x at 725.

> Jasper stated:
>
> Under the PPACA, each person subject to the mandate to purchase health insurance will be required to turn over Personal Identifiable Information (PII) and Personal Health Information (PHI) to a private company and/or government-run Exchange. Every person who is required to purchase health insurance will be required to provide the Exchange and/or the insurance company with an exact legal name, date of birth, social security number, gender, and address as a minimum.

He also stated that anyone who acquires insurance from a federal or state exchange would "have their information shared with a private contractor who is providing the technology to run the exchange," and that once the mandate was effective, no medical provider would allow a patient to pay for treatment via any method other than insurance. Finally, he stated that insurance providers gather medical treatment data about individuals, and that the practice would continue after the individual mandate became effective. Therefore, he concluded:

> The only manner in which a person can make sure that their private financial and health information will not be transmitted by their medical providers to a health insurance company is to avoid having health insurance at all. If a person is mandated to have health insurance and does purchase health insurance once the individual mandate comes into effect, that person's private financial and health information will be transmitted to his or her health insurer even if he pays the full amount in cash and requests that the insurer not be billed.

The primary problem with Jasper's affidavit testimony is his failure to articulate any specific factual support for his opinions. For example, Jasper provided opinions as to insurance companies' future practices and procedures, but he failed to provide any specific facts in support of his prediction. He provided similar opinions regarding the future practices and procedures of medical providers, but again failed to support the opinions with facts. Likewise, he failed to cite any specific provisions of the PPACA that require the disclosures he predicts will occur.

As stated above, Rule 702 specifically requires expert witnesses to base their testimony on sufficient facts or data. FED. R. EVID. 702(b). Proposed expert testimony unaccompanied by factual support is unreliable and must be excluded from consideration. *Paz*, 555 F.3d at 388; *Seaman*, 326 F. App'x at 725. Jasper's affidavit testimony regarding future application of the individual mandate is wholly unsubstantiated. At best, it is mere speculation. Therefore, the Court concludes that it is unreliable, and that it should be excluded from consideration.

2.  *The Effect of Jasper's Testimony, If Considered*

Even if the Court were to consider Jasper's testimony, it would not alter the outcome of the present motions. The affidavit contains no specific information

regarding Plaintiffs, the application and claim practices of any insurance company, the billing practices and procedures of any medical provider, or the protections to be afforded to any information disclosed by Plaintiffs. Therefore, even if the Court considered the affidavit, it would still be unable to conduct the fact-specific analysis demanded by the precedents discussed above, and Plaintiffs' claims would still be unripe.

### D.  *Summation*

The record contains no specific facts with regard to the confidential information that will be demanded of Plaintiffs, the practices and procedures of insurance companies and medical providers, or the legal and practical protections to be afforded to Plaintiffs' confidential information. Indeed, the parties acknowledge that pertinent details regarding the administration of the mandate and affecting the potential disclosure and/or protection of personal information will be set forth in regulations which remain unwritten or, at best, in a state of flux. Therefore, Plaintiffs' privacy claims are not ripe for judicial resolution. The Court further finds that Plaintiffs have not demonstrated that they will be subject to any hardship by the Court declining to consider their privacy claims. The individual mandate does not become effective until 2014,[7] and Plaintiffs can always file another complaint in the future. *See Tex. Indep. Producers & Royalty Owners Ass'n v. EPA*, 413 F.3d 479, 483 (5th Cir. 2005) (where enforcement of challenged law was over a year away and the further factual

---

[7] *See* 26 U.S.C. § 5000A(a).

development would benefit the court, case was not ripe for review).[8]

## V. CONCLUSION

Plaintiffs – genuinely, in the Court's opinion – assert their respect and appreciation for our Constitution's protection of individual liberty through the limitation of government power. This Court also respects the constitutional limits of government power, and "the case-or-controversy limitation is crucial in maintaining the tripartite allocation of power set forth in the Constitution." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006) (punctuation omitted). Indeed, "no principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Id*. The doctrines of standing and ripeness are mechanisms through which the Court enforces the case-or-controversy requirement. "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). The ripeness doctrine is "drawn from prudential reasons for refusing to exercise jurisdiction," and its "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract

---

[8]Even if the Court were to presently address the merits of the case, it does not appear that Plaintiffs would have much chance of success. Plaintiffs bear the burden of proving their claims, but they have not presented any admissible evidence regarding the effect of the individual mandate on their exercise of the constitutional right to privacy. They have not demonstrated that the individual mandate will violate their right to make certain fundamental personal decisions, or that it will violate their right to confidentiality.

disagreements." *Choice, Inc. v. Greenstein*, No. 11-30296, 2012 U.S. App. LEXIS 17355, at *10 (5th Cir. Aug. 17, 2012) (punctuation omitted).

Plaintiffs argue that Congress breached the constitutional boundaries of its power in passing the Affordable Care Act, yet they demand that this Court step outside the constitutional boundaries of its jurisdiction to settle what amounts to a public policy debate. The Court does "not sit as a super-legislature to determine the wisdom, need, and propriety of laws that touch economic problems, business affairs, or social conditions." *Griswold v. Connecticutt*, 381 U.S. 479, 482, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965); *see also Cantu-Delgadillo v. Holder*, 584 F.3d 682, 688-89 (5th Cir. 2009) (cases presenting constitutional challenges are "not a license for courts to judge the wisdom, fairness, or logic of legislative choices."). The issues raised by Plaintiffs may eventually become ripe for review. With the present record, however, this case presents nothing more than a hypothetical controversy over bare speculation.

The Court **grants** Defendants' Motion for Summary Judgment [73], **denies** Plaintiffs' Motion for Summary Judgment [76], and **dismisses** Plaintiffs' privacy claims **without prejudice**. Counsel shall contact the chambers of the undersigned judge within five days of the entry of this opinion for purposes of scheduling a teleconference to discuss whether there are any remaining issues to address before the Court enters a final judgment.

SO ORDERED AND ADJUDGED this 23rd day of August, 2012.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE